```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO



  -----------------------------------
                                     :
  THE UNITED STATES OF AMERICA       :
                                     :
              Plaintiff              :
                                     :
                   v.                : 3:19-mj-01698-SCC-1
                                     :
  BRYAN GILBERT DIAZ DE JESUS        :
                                     :
              Defendant              :
  -----------------------------------
```

DETENTION HEARING

Was held Before HONORABLE US MAGISTRATE JUDGE SILVIA CARRENO COLL, sitting in San Juan, Puerto Rico, on September 5, 2019 at 2:34 p.m.

```
 1   APPEARANCES:
 2
 3   FOR THE GOVERNMENT:
 4   MARIA MONTANEZ, AUSA
 5
 6   FOR DEFENDANT:
 7   VICTOR MIRANDA, AFPD
 8   WILFREDO DIAZ NARVAEZ ESQ.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1         THE CLERK: Magistrate Case 19-1698, USA versus
2   Bryan Gilbert Diaz De Jesus for Detention Hearing.  On
3   behalf of the Government, AUSA Maria Montanez.  On behalf of
4   the Defendant, Attorney Wilfredo Diaz Narvaez and also
5   present AFPD Victor Miranda.
6         MS. MONTANEZ: Good afternoon, Your Honor.  The
7   United States is ready to proceed.
8         THE MAGISTRATE: Good afternoon.  Mr. Diaz, you
9   have filed a Notice of Appearance, is that correct?
10        MR. DIAZ: That's correct, Your Honor.  Mr.
11  Miranda?
12        THE MAGISTRATE: Mr. Miranda.
13        MR. MIRANDA: Your Honor, in view of the Notice of
14  Appearance by Mr. Diaz Narvaez, I request that you authorize
15  me to retire.
16        THE MAGISTRATE: Granted.  Thank you, Mr. Miranda.
17        MR. MIRANDA: Thank you.
18        THE MAGISTRATE: All right.  Mr. Diaz, are you
19  going to move the Court for bail?
20        MR. DIAZ: Yes, Your Honor.  We agree with the
21  recommendation of the Pre-Trial Service office. We shall
22  proffer information that defendant, Bryan Diaz is neither a
23  danger of flight or a danger to the community. He's a hard
24  working man. Even if it doesn't appear in the information,
25  the Pre-Trial Service, he's working as a domicile barber

1  since the year 2012. He's been working since the age of 16.
2  He's labored in the local -- was laboring in a local
3  supermarket to fast food chains.  Has strong ties to --
4          THE MAGISTRATE: Okay, why does the report state at
5  page one that he's unemployed?
6          MR. DIAZ: Well, I really don't know, Your Honor,
7  but the information that I can submit the proffer to the
8  Court is that he was working as a barber, domicile barber,
9  and this was -- I corroborate the information with the
10 family.
11         THE MAGISTRATE: So he was working on his own.
12         MR. DIAZ: Yes, Your Honor.
13         THE MAGISTRATE: He would conduct home visits for
14 purposes of providing his service as a barber.
15         MR. DIAZ: Yes, Your Honor, that's correct.
16         THE MAGISTRATE: Okay.
17         MR. DIAZ: His sister resides in Manuel A. Perez.
18 Also his family also -- he has another additional family who
19 resides in other places and was working as a domicile
20 barber.
21         THE MAGISTRATE: Let me hear Ms. Montanez.
22         MR. DIAZ: Well, I want to -- about that point.
23         THE MAGISTRATE: Let me hear Ms. Montanez.  Maybe
24 she's in agreement with bail.
25         MS. MONTANEZ: No, no, Your Honor, we are not.

1          THE MAGISTRATE: No, you're not.  Okay.  All right.
2          MR. DIAZ: Your Honor, he's a dedicated and a
3   loving son to his two sons, Gilbert and Jayden. He has a
4   stable relationship for nine years with Raiza Moreno.
5   Moreover, he has built an unshakeable bond with his two
6   sons.  Even so, he has been dedicating, he has been devoted
7   to in the afternoons to be a volunteer coaching to his
8   baseball team.
9       Mr. Diaz obtained his high school diploma with a rapid
10  pace in Escuela para Adultos in Rio Piedras and immediately
11  went to complete an Associate degree in hair stylist from
12  Instituto de Banca y Comercio. His interest in being
13  released on bail today is to spend as much time possible
14  with his family as a parent as well as a husband.
15      We think that the reasons why a danger to the community
16  are significantly mitigated and outweighed by Mr. Diaz'
17  personal circumstances and his strong ties.
18      At this point it should be noted, Your Honor, that
19  there's no -- I don't see an arrest that came from Florida
20  in his information.  He was arrested for possession of two
21  Percocets and marijuana. That case was dismissed.  Maybe
22  that's the reason it was not mentioned but that's the
23  information that we have with the interview of our client
24  and we should submit that information to the Court.
25          THE MAGISTRATE: All right.

1          MR. DIAZ: It should be emphasized that his
2  passport is expired; that he, his last visit outside the
3  jurisdiction was on March to visit his mother in Orlando.
4  If Ms. Moreno Gonzalez requests a witness to serve as a
5  third party custodian.  His residence is located in
6  Urbanizacion Santiago Iglesias, Rivera Gautier Street 14303
7  in San Juan.
8          THE MAGISTRATE: You don't have to state the full
9  address on the record.
10         MR. DIAZ: No, no.  I just -- and she's an
11 excellent -- I just want to mention that she's an excellent
12 resource.  She has been an Admissions officer for the
13 University at Carolina campus for the last ten years.  We
14 have in addition -- we have another third party custodian,
15 his mother.  We would like to acknowledge her presence in
16 court in open court and he has also another additional third
17 party custodian.
18      So, based on the information that has been proffered,
19 we strongly believe that a combination of supervision, of
20 the most strictest condition, a third party custodian, home
21 incarceration, electronic monitoring and complying with any
22 other conditions that Your Honor deems reasonable, will
23 sufficiently mitigate any risk of flight and provide the
24 assurance to the Court that Bryan will appear into any
25 hearing of the Court.

1          THE MAGISTRATE: Ms. Montanez.

2          MS. MONTANEZ: Your Honor, we respectfully disagree

3   with the recommendation of the Pre-Trial Services Report.

4   Beginning with the fact that defense counsel stated that he

5   doesn't know why the Florida convictions are not in the PSR,

6   well, as per the information we have, the defendant was

7   arrested in Orlando in 2016 and at that time he did not

8   provide his complete full name.

9       He provided his second last name as his first last name

10  and that is why in the NCI system, the defendant appears as

11  Bryan Gilbert De Jesus instead of Bryan Gilbert Diaz De

12  Jesus, which is his correct full name and at that point in

13  2016 he was arrested.

14      We don't know the exact quantity because the charges

15  were later abandoned as per the NCIC but at that time and as

16  per the NCIC report, he was charged with being in possession

17  of controlled substances; that being marijuana, cocaine,

18  synthetic marijuana and some kind of prescription drug

19  without a prescription.

20      We don't know the quantity and as the defendant, it is

21  our position that he did not inform Probation Officers that

22  he had a juvenile adjudication. He did not inform Probation

23  Officers of that prior arrest.

24      We understand that the defendant is a danger to the

25  community, Your Honor.  This defendant has been identified

1    of being part of a drug trafficking organization that is

2    engaged unfortunately in the smuggling of drugs including

3    fentanyl.  Only on one day this defendant was captured by

4    video cameras and surveillance delivering twenty seven

5    parcels to different postal offices. Some of those parcels

6    were containing heroin, some were containing cocaine and

7    some were containing fentanyl.

8         At this time we are in possession of eighteen

9    additional parcels that were not part of the affidavit the

10   defendant is charged with but are pending to be evaluated

11   for those new eighteen parcels we have already obtained

12   secured as required and this happened after the complaint

13   was authorized but before the defendant was arrested.

14        He was seen or captured delivering eighteen of his own

15   parcels and we recuperated those.  Unfortunately this

16   defendant is part of a big organization that is involved in

17   the deadliest drug crisis that is facing the United States

18   at this point, which is the Opioid crisis.

19        By participating in this chain, he's putting in danger

20   not only the persons that are actually buying these

21   controlled substances, some of which are going to the United

22   States but others are going as far as Australia.

23        These sales are being done through the dark web, so

24   it's very difficult to identify exactly for those who are

25   buying, the real identity of the persons who are doing the

1   sale.

2       Notwithstanding that fact, the investigation has
3   revealed that the system this organization is using to
4   charge or receive the money or currency in exchange for
5   those sales is related to this defendant, Bryan Gilbert Diaz
6   De Jesus, and a bank account in Banco Popular.  That is part
7   of the investigation at this point.

8       The defendant has been or the packages the defendant
9   had been mailing are going to the United States to different
10  states, including New York, Oregon, Kansas, Los Angeles,
11  Seattle and one, at least one is going or was going to
12  Australia because we were able to locate that package.

13      On May 23, 2019, undercover agents in another
14  jurisdiction conducted a drug buy of 32 grams of cocaine and
15  in the package of that -- in the sticker of the envelope, in
16  that package, the defendant's fingerprints are identified.
17  Three latent prints of this defendant were identified.  That
18  is how this investigation basically started with this
19  particular individual.

20      So, we do have evidence that he has been involved since
21  at least May of this year in the shipping of different
22  postal envelopes that contained heroin, cocaine and fentanyl
23  and through this process, he's endangering those who buy,
24  the agents that are involved in locating these envelopes,
25  the mail carriers are completely unknown to the substances

1   they are carrying inside and even the K-9s are involved in
2   the detection of these narcotics.
3          At this time and as per the affidavit, we have more
4   than 40 grams of fentanyl located in only some of the
5   parcels that have seized. We're still waiting for the final
6   lab reports of those substances but if it's true that this
7   defendant has been engaged in the handling or possession of
8   more than 40 grams of fentanyl, he will be charged with a
9   minimum mandatory of five years.
10         That is still pending the lab report and at this time
11  he was in the complaint charged with a detectable amounts of
12  heroin, cocaine, fentanyl and the misguiding by not labeling
13  appropriately what substance is contained in the packages.
14         For that reason, Your Honor, we believe he is a danger
15  to the community and he should remain detained. I will also
16  want to add that there are discrepancies in the information
17  the defendant provided versus the information his mother
18  provided and that is why we have discrepancies in the fact
19  he didn't report any criminal history but now we know as per
20  his mother that he has a juvenile adjudication record and
21  that he had this criminal arrest record in Florida.
22         He did not report any history of substance abuse
23  treatment but his mother did report that he had served one
24  year in a diversionary program.  He also owes more than one
25  thousand dollars, if I'm not mistaken, in traffic fines and

1  the fact that this crime has been conducted in a manner that
2  involves the defendant at a house because these transactions
3  are being done over the internet, tend to indicate that
4  none, neither the mother nor the third party custodian
5  suggested by defense counsel will be able to control the
6  defendant or that the defendant may be able to abide by any
7  conditions this Court might impose and that is why we're
8  requesting the detention.
9           THE MAGISTRATE: Thank you.  Well, let me ask you
10 something.  You state that all these transactions occurred
11 on line by way of the internet or emails, however, the
12 defendant you stated was identified as delivering packages
13 to the post office.  Okay, so I'm taking this one step
14 further.  Your argument is relating to the charged conduct.
15          MS. MONTANEZ: Yes.
16          THE MAGISTRATE: That is dangerous in nature
17 involving fentanyl and putting in harms way those that
18 handled these packages.
19          MS. MONTANEZ: Correct.
20          THE MAGISTRATE: The weight of the evidence.  So,
21 on the nature of the offense and the weight of the evidence
22 and the fact that many of these transactions were on line,
23 the defendant would have to go to the post office to either
24 receive or deliver the package.  So, don't you think that
25 there are conditions that can be imposed that appease those

1    concerns?

2           MS. MONTANEZ: No, Your Honor, because it could be
3    the defendant or it could be somebody else.  We have
4    information that tend to indicate that other persons might
5    also be involved in the delivering of packages to the postal
6    offices and that is part of the organization the defendant
7    is involved.

8           THE MAGISTRATE: So, what you're saying is that
9    there is a larger scheme and that even if you set the
10   strictest of the conditions, home incarcerated, he would be
11   able to continue doing this.

12          MS. MONTANEZ: Yes, Your Honor.

13          THE MAGISTRATE: What's your answer to that?

14          MR. DIAZ: Regarding, well first point, regarding
15   the criminal history category, the licensed driver was --

16          THE MAGISTRATE: The criminal history category.

17          MR. DIAZ: Yeah, regarding -- I'm sorry, regarding
18   the criminal history, I mean the arrest in Florida.

19          THE MAGISTRATE: The criminal record.

20          MR. DIAZ: Yes, the criminal record.  The licensed
21   driver was seized in Orlando during the intervention.  So,
22   so the last entry appeared in the record.  The second was as
23   well as the adjudication, Your Honor, it was diversion.  So,
24   maybe that's the reason it doesn't -- it does not appear in
25   the record.  Regarding the -- we can have the protective

1   order regarding the discovery and with all the conditions --

2              THE MAGISTRATE: I don't understand your argument.

3              MR. DIAZ: Well, that he -- we can have like a

4   provision to discuss any matter regarding the case to

5   another third person.

6              THE MAGISTRATE: But that's not the prosecutor's

7   argument.  What she's saying is that because this is part of

8   a larger scheme, even if I impose strict conditions, he

9   would be able to continue conducting these transactions.

10  That's her argument.

11             MR. DIAZ: Well, we are not in agreement with that.

12             THE MAGISTRATE: Of course you're not.  That's why

13  we have this exchange.

14             MR DIAZ: It's a profile of a mule.  This is not --

15  even in the sworn statement, Your Honor, it doesn't picture,

16  depicts any other role.

17             THE MAGISTRATE: Well, this is the thing.  Pre-

18  Trial Services is recommending release because he has a

19  possible third party custodian.  He has a suitable

20  residence.  He does not have a criminal record except for

21  the juvenile adjudication and we learned today about an

22  additional arrest.

23        So, those factors would favor release.  However, Pre-

24  Trial Services does not take into account the nature of the

25  offense or the weight of the evidence.  That's for the Court

14

1  to do and in that sense, the prosecutor makes an excellent
2  argument regarding dangerousness because this particular
3  substance, fentanyl is deadly in nature and if this has been
4  sent in packages in the mail, in theory, every mail person
5  that handles this package is at risk and anyone that
6  receives the package because there's absolutely no control
7  of who receives the package and who opens the package and
8  how this is handled.
9      So, in that sense, it's pretty problematic.  In
10 addition, your client has a substance abuse problem that you
11 have not addressed, page 4 of the report.
12          MR. DIAZ: Yes.  He has a substance abuse history
13 that could be addressed with treatment and (no recording)
14          THE MAGISTRATE: As detailed in the Pre-Trial
15 Services Report and as I said before, I ascertained that
16 regarding community ties, a suitable third party custodian,
17 a suitable place to reside, the fact that he's not a risk of
18 flight because he has an expired passport, there's no ties
19 to foreign countries and that sort of thing, that would tilt
20 the balance in favor of release.
21     However, I have serious concerns regarding the nature
22 of the offense, the weight of the evidence and I would like
23 the prosecutor, Ms. Montanez, to argue, to proffer why even
24 if I impose the strictest condition, which is home
25 incarceration with an electronic monitoring device, you feel

1  that that's not enough and that still the citizens, the
2  community would still be in danger because of the larger
3  scheme that you have described, why those measures are not
4  enough?
5           MS. MONTANEZ: Your Honor, in this particular case,
6  for example, before you can authorize or after the complaint
7  was starting or authorized, at that point it was the
8  defendant who was traveling with the eighteen new packages
9  but after his arrest, the account in the way that it's being
10 monitored, has been -- it's still conducting transactions
11 and at this point we understand and the defendant is aware
12 and is not available to do that because he has been
13 incarcerated but there have been some other transactions
14 that have been conducted and we understand that is taking
15 place by other members of the organization.
16      Nevertheless, that account is the account related to
17 defendant's bank account in Banco Popular, Bryan Gilbert
18 Diaz De Jesus.
19           THE MAGISTRATE: So, even while he's incarcerated
20 the scheme continues functioning.
21           MS. MONTANEZ: Yes, unfortunately.  A few days ago
22 a thousand dollars buy of illegal narcotics through this
23 dark web was conducted and this was after the defendant's
24 arrest, after the defendant's arrest and at this time that
25 account is connected to the defendant.  That is our concern

1   and I proffered this to defense counsel before the hearing.

2   　　　　We are not sure who exactly is dealing with these

3   packages but at least there's one death that occurred in

4   Seattle of a person that received a package from Puerto Rico

5   from the addresses -- the packages this defendant had

6   transported had.  The same address because the addresses of

7   the user are not the real addresses of the person who should

8   be -- the package should be returned to but they are

9   consistent in the type of addresses that they're using.

10  They have like three or five different addresses that they

11  use constantly.

12  　　　　　　　THE MAGISTRATE: So the investigation is still

13  ongoing.

14  　　　　　　　MS. MONTANEZ: The investigation is still ongoing

15  and at least one person that's in the house in Seattle,

16  brought contamination with fentanyl and other drugs and the

17  box that was found open in that house is a box that

18  contained the address this defendant and the organization

19  has been using to --

20  　　　　　　　THE MAGISTRATE: To mail the packages.

21  　　　　　　　MS. MONTANEZ: To mail the packages through the

22  dark web.

23  　　　　　　　THE MAGISTRATE: All right.  Yes, Mr. Diaz.

24  　　　　　　　MR. DIAZ: Your Honor, we don't have enough

25  evidence in terms of the ongoing investigation of our

1  client. We saw a sworn statement and we saw the sworn
2  statement and it doesn't mention any overt act regarding
3  that kind of damage.  We see and we reaffirm our position
4  that it seems like we have a mule and we can't even infer if
5  he has or not has prior knowledge of what was in the mail
6  box but --
7           THE MAGISTRATE: Well, his bank account is still
8  receiving proceeds from this activity even while he's in
9  jail.
10          MR. DIAZ: Well, that's weird because he doesn't
11 have that information and he's not in control of the bank
12 account.
13          THE MAGISTRATE: Which raises many issues and I'm
14 really concerned with the proffer made by the prosecutor.
15 So, I'm going to order him detained based on the nature of
16 the offense and the weight of the evidence.  If after you
17 receive discovery, the government cannot prove the proffered
18 information today, you may move to re-open but I'm really
19 concerned.
20     I mean this is a deadly narcotic and being shipped in
21 packages that many people may be exposed to is quite a
22 concern and it seems to me from the proffer made by the
23 prosecutor that this is much larger than your client but
24 he's part of it.  So I'm ordering him detained.  Thank you.
25          MS. MONTANEZ: Your Honor, if I may, regarding this

1  same case, we would like to request if the affidavit can be
2  made to the parties for the use of defense counsel and all
3  members of the defense team and the United States but so
4  that it not be tendered to other persons not involved in the
5  case because of some of the information it contains.
6          THE MAGISTRATE: Very well.
7          MR. DIAZ: I don't have any objection.
8          MS. MONTANEZ: Thank you.
9          THE MAGISTRATE: Thank you.
10              (The hearing adjourned at 3:00 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
1  U.S. DISTRICT COURT    )

2  DISTRICT OF PUERTO RICO)

3

4      I certify that this transcript consisting of 19 pages

5  is a true and accurate transcription to the best of my

6  ability of the proceedings in this case before the Honorable

7  U.S. Magistrate Judge, Silvia Carreno Coll, on September 5,

8  2019.

9

10

11 S/Boabdil Vazquetelles

12 Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25
```